UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARINA A. VERA,<br><br>            Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>            Defendant. | Case No.  1:20-cv-01489-DAD-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(Docs. 18, 19)<br><br>FOURTEEN-DAY DEADLINE |

**<u>Findings and Recommendations</u>**

**<u>INTRODUCTION</u>**

Plaintiff Marina A. Vera ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for findings and recommendations.

---

[1]  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

1

Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record and is based upon proper legal standards. Accordingly, this Court will recommend affirming the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits on May 15, 2019. AR 202-05.[2] Plaintiff alleged that she became disabled on January 5, 2017, due to ruptured disk lower back, mid-back herniated disk, neck herniated disk, slow on responding, left leg numbness, tingling all the way to bottom of foot, and surgery recommended. AR 15, 202, 228. Plaintiff's application was denied initially and on reconsideration. AR 115-18, 124-28. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ William Reamon held a hearing on May 21, 2020. AR 37-90. ALJ Reamon issued an order denying benefits on June 24, 2020. AR 12-32. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

### Hearing Testimony

The ALJ held a telephonic hearing on May 21, 2020. Plaintiff appeared with her attorney, Zachery Ishikawa. Robin Cook, an impartial vocational expert, also appeared and testified. AR 39.

In response to questions from the ALJ, Plaintiff testified that she has a high school diploma, along with some college units. She can read and write in English. She can also do math. AR 48.

The vocational expert ("VE") asked clarifying questions regarding Plaintiff's past work. AR 49. Plaintiff testified that in her job as cash clerk, or cash applications clerk, she was on her feet most of the day and she was sitting, standing, and walking. AR 49-50. In her job doing benefits processing, Plaintiff was on her feet for most of the day. It was the same for her patient registration job, and she was constantly up and down. AR 50. The VE classified Plaintiff's past work as cash accounting clerk, benefits clerk, and patient registration clerk. AR 50-51.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

In response to questions from her attorney, Plaintiff confirmed that she has problems with her neck, thoracic spine (middle back) and her lumbar spine. Her symptoms from these conditions include pain radiating down her legs, in her buttocks. She always has pain, which is increases with standing, walking, or sitting. AR 51-52. Plaintiff testified that she cannot stand for long. She constantly has to alternate between sitting, standing and lying down. AR 52-53. When she stands, she will get numbness and tingling in her legs within a few minutes and her feet are cold from the numbness. She has the same pain when sitting, feeling cramping on her lower back and numbness down her legs. Sitting becomes unbearable within minutes. It is hard for her to get up when her toes, feet and legs are numb and tingling. She also starts to feel nauseous from the pain. She has the same problems with walking as she does with standing. During the day, she is mostly lying down. AR 53-55.

When asked about a normal day, Plaintiff testified that she wakes up at 4:00 a.m., but there is no sleeping at night. She is constantly up because it is hard to position herself while lying in bed. After she wakes up, she will walk to the kitchen, drink some water, take her medications, and then lie back down. For the rest of the day, she will wash the dishes in pieces, do a little bit and then go lie down. Plaintiff testified that her daughter helps with the chores. Plaintiff does not even put laundry into the washing machine or pull stuff out of the dryer. AR 55-56. Her daughter drives her to the market, helps push the basket, and carries the bags. AR 57. Plaintiff can carry less than five pounds. AR 57-58. She can drive, but it is hard for her to turn her neck and it feels like she has 60-pounds weights on the bottom of her legs pulling her down. AR 58-59.

Plaintiff confirmed that Dr. Timothy Watson recommended lumbar and cervical spine surgery. Plaintiff did not get the surgery because they were pushing her to go back to work. At work, they gave her a new job to accommodate her, and she was able to keep that job for five months. She sat eight hours a day, but she could get up and walk if she had complications. However, she was not sleeping at night, taking four or five hot baths to soothe her body to get through the next day. She called in sick a few times. She cannot take pain medications, she gets nauseous, and her heart starts beating fast. Ibuprofen caused her high blood pressure to spike. AR 59-62.

3

Plaintiff also testified that she is dealing with migraines as a result of her neck and back impairments. She has migraines two or three times a week, which last one or two days. When she has a migraine, she is not able to concentrate, and she cannot look at light. AR 64.

In response to questions from the ALJ, Plaintiff testified that for the four hours between 8:00 a.m. and 12:00 p.m., she will lie down about three and a half hours. For the time between 12:00 p.m. and 5:00 p.m., she is only up for about half an hour of that period. The doctor in Bakersfield did not want her to exert herself. When Plaintiff asked if she could go to the chiropractor or physical therapy, the doctor told her that he did not want anybody touching her or manipulating her body. Plaintiff did not return to this doctor after the initial visit because he was in Bakersfield. She did not see another spinal care specialist after that. AR 66-68.

Plaintiff confirmed that her state disability payments stopped in March 2019 because they said she was no longer disabled. Plaintiff was told that maybe they did not get all of her records, like the specialist report saying she needed surgery. The payments never recommenced. In the fourteen months after the payments stopped, she applied for work and did a phone interview to return to a job like the one she had before, posting payments. She never heard back. She has not looked for work since the interview. AR 70-73. Plaintiff did not think she could perform the jobs she applied for after her onset date. AR 80.

Plaintiff also confirmed that she received a settlement from her car accident. She had an attorney and she received $60,000 in settlement. She did not receive any payments for wage loss, but $9,000 of her medical bills were paid. She never talked to any insurance company about covering her back surgery. Although the doctor said Plaintiff did not seem to be very interested in having surgery, Plaintiff testified that she was in shock, not that she was not interested. She did not go back to see him after he suggested surgery. She has not seen anybody else for a consultation. She went back to see Pamela Hernandez, the physician's assistant that sees her for everything. Ms. Hernandez cannot do anything for Plaintiff's back problems, but she has been giving Plaintiff Flexeril. Plaintiff takes the Flexeril at night, but it is not really of any use to her. She does not take any other pain medication. Ms. Hernandez also raised Plaintiff's high blood pressure medication because of dizziness. Plaintiff has not been given anything specifically for dizziness. AR 73-79.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. The ALJ asked the VE to consider certain limitations. First, the ALJ asked the VE to consider limitations of 20 pounds occasional lifting and carrying, 10 pounds frequently, standing and/or walking for about six hours of an eight-hour day, seated activities for about six hours of an eight-hour day, no ladder, rope, or scaffold climbing allowed, but occasional ramp or stair climbing, occasional balancing, stooping, kneeling, crouching, and crawling, avoiding concentrated exposure to such things as fumes, odors, dust, gases, and poor ventilation, and avoiding concentrated exposure to hazards, such as the operation of dangerous moving machinery or exposure to unprotected heights. The VE testified that with those light restrictions, all of Plaintiff's past jobs would fit the hypothetical. AR 82-83. If Plaintiff was relegated to lying down for all but about one hour of the time between 8:00 a.m. and 5:00 p.m., it would create too much time off-task for somebody to do even the sedentary jobs that Plaintiff had done in the past. The VE confirmed that no job would allow someone to lie down for seven out of eight hours of the workday. AR 83. The VE also confirmed that Plaintiff's past work would not involve any hazards. AR 84.

Based on her experience in private practice, the VE also testified that if a person missed two or more days per month, it would be work preclusive. Also, if a person is off task in excess of 10 percent of the workday on a regular basis, it would be work preclusive. AR 84-85.

Following the ALJ's questions, Plaintiff's counsel asked the VE additional hypothetical questions. Counsel asked the VE to assume the first hypothetical and add that this person would have to alternate between sit and stand six minutes every hour. The VE testified that there would not be an issue with the past sedentary positions as generally performed. AR 85-87. If the hypothetical added that the individual was limited to less than occasional repetitive neck movements, the VE testified that the individual could perform Plaintiff's past relevant work. The VE clarified that there would not be repetitive neck movements in the past relevant work. AR 88.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

///

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 15-32. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 5, 2017, her alleged onset date. AR 18. The ALJ identified the following severe impairments: lumbar degenerative disc disease with disc herniation at the L4-:5 level; degenerative disc disease of the cervical spine with multilevel disc herniations, thecal sac narrowing, facet arthropathy, and foraminal narrowing; and asthma. AR 18-20. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 20-21.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except she was limited to 20 pounds occasionally of lifting and carrying, 10 pounds of frequent lifting and carrying; standing and/or walking for about 6 hours of an 8-hour day; seated activities for about 6 hours of an 8-hour day; no ladder, rope, or scaffold climbing allowed; occasional ramp or stair climbing would be permitted as would occasional balancing, stooping, kneeling, crouching, and crawling; avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; and avoid concentrated exposure to hazards such as the operation of dangerous moving machinery or exposure to unprotected heights. AR 21-31. With this RFC, the ALJ found that Plaintiff could perform her past relevant work as a cash accounting clerk, a benefits clerk, and a patient registration clerk. AR 31. The ALJ therefore concluded that Plaintiff was not disabled. AR 31-32.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be

considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff contends that the ALJ erred by rejecting the opinions of PA Pamela Hernandez and Dr. Augustin Rubio and by failing to offer legitimate reasons for rejecting Plaintiff's subjective complaints. (Doc. 18 at 1.)

**A. Medical Opinion Evidence**

Plaintiff first contends that the ALJ erred by rejecting the opinion evidence from Dr. Rubio and PA Hernandez without setting forth specific, legitimate reasons for doing so. (Doc. 18 at 8.)

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

7

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions. 20 C.F.R. § 404.1520c  Under the new regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a)(1). The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(3)(1)-(5). Supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(b)(2).

Ninth Circuit case law preceding the new regulations afforded deference to the medical opinions of treating and examining physicians. Indeed, prior to the current regulations, the Ninth Circuit required ALJs to provide clear and convincing or specific and legitimate reasons for rejecting the medical opinions of treating or examining physicians. Contrary to Plaintiff's suggestion, these standards of articulation no longer apply in light of the new regulations, and the ALJ was not required to provide "specific and legitimate reasons" to discount the medical opinions. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (finding revised social security regulations "clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant"). However, the Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Id.* (internal citations omitted); *see* 20 C.F.R. § 404.1520c(b).

<u>Opinion of PA Hernandez and Dr. Rubio</u>

On June 9, 2020, PA Hernandez and Dr. Rubio completed a Physical Residual Function Capacity Medical Source Statement form. AR 435-38. They identified Plaintiff's diagnosis as lumbar

disc herniation with symptoms including constant pain and nausea due to intense pain. Plaintiff was noted to be taking Flexeril at bedtime, which caused drowsiness. AR 435. PA Hernandez and Dr. Rubio opined that Plaintiff could frequently lift or carry less than 5 pounds, occasionally lift 5 pounds, rarely lift 10 pounds, and never lift 15 or 20 pounds. AR 435-36. She could not walk one city block without rest or severe pain and could not climb steps without the use of a handrail at a reasonable pace. She had problems with balance when ambulating and problems with stooping, crouching and bending. PA Hernandez and Dr. Rubio opined that Plaintiff must lie down/recline for 3 hours because of pain. In an 8-hour workday, Plaintiff would need to lie down and/or recline for about 4 hours. She could sit less than one hour in an 8-hour workday and stand and walk less than one hour in an 8-hour workday. AR 436. She would need to take unscheduled breaks daily for 30 minutes and would need to lie down/sit quietly during those breaks. Plaintiff must use an assistive device for prolonged ambulation and Plaintiff was noted to use a grocery cart at the store. AR 436-37. In an 8-hour workday, Plaintiff could grasp, turn and twist objects with her right hand 80% of the time and 30% of the time with her left hand. She could use her fingers on the right hand for fine manipulations 80% of the time and 30% of the time with her fingers on the left hand. She could reach overhead with her right arm 5-10% of the time and 5-10% of the time with her left arm. Plaintiff did not have the ability to climb ladders, scaffolds, ropes or ramps, but she could climb stairs slowly holding onto railings. AR 437.

PA Hernandez and Dr. Rubio also opined that Plaintiff's depression and anxiety contributed to Plaintiff's physical condition or functional limitations. She would frequently experience pain severe enough to interfere with attention and concentration needed to perform simple work tasks and would frequently experience stress severe enough to interfere with attention and concentration needed to perform simple work tasks. AR 437. PA Hernandez and Dr. Rubio indicated that Plaintiff had a slower ability to comprehend something read or while reading. AR 438. They opined that Plaintiff would be off task 25% of an 8-hour workday and, on average, would be absent from work 4 days per month. She also would be unable to complete an 8-hour workday 4 days per month. Plaintiff could be expected to perform a job, 8 hours per day, 5 days per week on a sustained basis 50% or less compared to an average worker. They also opined that Plaintiff was unable to obtain and retain work in a

competitive work environment, 8 hours per day, 5 days per week for a continuous period of six months or more because of her impairments or limitations. AR 438.

The ALJ found PA Hernandez and Dr. Rubio's assessment "not persuasive." AR 30. In so doing, the Court finds that the ALJ appropriately evaluated this opinion under the new regulations.[4] First, the ALJ considered that PA Hernandez last saw Plaintiff in August 2019, but she did not render her opinion until June 2020. AR 30, 364, 438. Under the new regulations, an ALJ may properly consider the relationship with the claimant, including the frequency of visits with the medical source. 20 C.F.R. § 404.1520c(b)(2), (c)(3)(ii). Plaintiff does not challenge this determination by the ALJ.

Second, the ALJ found that the opinion "was not well supported by Ms. Hernandez's treatment notes." AR 30. This reason expressly invokes the supportability factor, which is one of the key factors an ALJ must consider when determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2). The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive that medical opinion is. 20 C.F.R. § 404.1520c(c)(1). Here, the ALJ acknowledged that Plaintiff's treatment notes with Adventist Health Community, including PA Hernandez's notes, did contain positive findings related to the cervical and lumbar spine, such as a slowed gait, listing of the lumbar spine, and positive straight leg testing in August and December 2018, as well as in March 2019. AR 30, 323 (August 2018), 342 (December 2018), 344-45 (March 2019). However, in assessing supportability of the opinion, the ALJ determined that the bulk of PA Hernandez's treatment notes from February 2018 through August 2019, including examinations in August 2018 and March 2019, generally revealed no acute distress and unremarkable musculoskeletal and neurological findings, including with regard to gait, motor function, and sensation. AR 30, 326 [normal gait, no acute distress, grossly intact motor and sensory examination], 333 [normal gait, grossly intact motor and sensory examination], 338 [no acute distress, normal gait, normal motor function], 349 [no acute distress, normal gait, normal motor function], 352 [no acute distress, normal

---

[4] The ALJ noted Ms. Hernandez "had the opportunity to participate in the claimant's care, with Dr. Rubio reviewing the treatment notes at times." AR 30. For ease of understanding, and to conform with the treatment record, the Court will refer to the assessment as an opinion rendered by PA Hernandez.

gait, grossly intact motor and sensory examination], 364 [no acute distress, normal gait, normal motor function]. Plaintiff does not dispute the nature of these evaluation findings. Instead, Plaintiff contends that the ALJ erred by relying "heavily upon examination findings from visits for acute care, wholly unrelated to Plaintiff's complaints of disabling back pain." (Doc. 18 at 9.) Plaintiff's contention is not persuasive. The ALJ properly considered PA Hernandez's objective findings on examination throughout the course of treatment to determine if the opined limitations were supported. Moreover, Plaintiff's argument regarding disabling back pain is undermined by treatment records demonstrating that she only infrequently complained to PA Hernandez about such disabling pain.

In connection with Plaintiff's asthma, the ALJ also noted that PA Hernandez's treatment notes revealed unremarkable respiratory findings. AR 322 [lungs clear to auscultation, no wheezes or abnormal breath sounds], 326 [lungs clear to auscultation], 333 [lungs clear to auscultation], 338 [lungs clear to auscultation, respirations non-labored, breath sounds equal], 342 [lungs clear to auscultation, respirations non-labored, breath sounds equal], 344 [lungs clear to auscultation], 349 [lungs clear to auscultation, respirations non-labored, breath sounds equal], 352 [lungs clear to auscultation], 361 [denied any current or recent exacerbation of asthma], 364 [lungs clear to auscultation, respirations non-labored, breath sounds equal]. Even when Plaintiff complained to PA Hernandez that her asthma was "starting to act up," a physical examination of her respiratory system showed: "Lungs are clear to auscultation, Respirations are non-labored, Breath sounds are equal." AR 335, 338. Plaintiff does not challenge the ALJ's determination regarding unremarkable respiratory findings.

Third, the ALJ found that PA Hernandez's opinion was "not consistent with the relevant medical evidence of record as a whole." AR 30. The ALJ's reasoning invokes the consistency factor, which means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim'" 20 C.F.R. § 404.1520c(c)(2). For instance, the ALJ noted that while Plaintiff had asthma exacerbations in October 2018 and January 2020, she otherwise had unremarkable respiratory findings. AR 30, 318, 320, 322, 326, 330 [October 2018: respirations non-labored, breath sounds equal, symmetrical chest wall expansion, moderate ronchi and minimal expiratory wheeze], 333, 338, 342, 344, 349, 352, 364, 375 [chest/lungs symmetric with

11

normal excursion, clear to auscultation], 399-408 [January 2020: emergency treatment for asthma with acute exacerbation, no acute disease of the chest on x-ray, oxygen saturation 98%].

Additionally, the ALJ noted record evidence that on January 6, 2017, the date following both a motor vehicle accident and her alleged onset date, emergency medical records showed that Plaintiff had full range of motion of the neck and back with no tenderness of the back, independent ambulation and normal sensation, motor function, coordination, and strength. AR 30, 423-26. Following treatment, Plaintiff was able to move her neck and back without difficulty or grimace. AR 426. In March 2017, a physical examination completed by Dr. Timothy Watson showed no scoliosis or spasms, normal gait with no use of an assistive device, normal lumbar motor function, as well as intact sensation, lower extremity strength, and reflexes. AR 30, 428-32. Although Plaintiff had pain on elevated/supine straight leg raising on the right and left, her straight leg raise-extended/sitting was negative on both the right and left. AR 431. In October 2018, the claimant had normal strength, normal range of motion, and normal gait. AR 30, 331. In January 2020, Plaintiff had no musculoskeletal deformity, no acute distress and no neurological deficit. AR 30, 406.

Critically, the ALJ also found that PA Hernandez's assessment was largely inconsistent with the October 2019 consultative examination by Roger Wagner, M.D. AR 30. For example, the ALJ noted Dr. Wagner's observation that Plaintiff did not have difficulty getting up and down from a chair, walking to the examination room, bending at the waist, or getting on or off the examination table, and she appeared comfortable while sitting. AR 30, 374-75. Dr. Wagner also noted that Plaintiff had good dexterity and flexibility with normal gait, station, and coordination. AR 30, 375. The ALJ considered that while PA Hernandez assessed significant limitations in Plaintiff's use of the upper extremities, those limitations were not consistent with the objective findings, including Dr. Wanger's observations that Plaintiff had normal muscle bulk and tone, sensation, reflexes, strength, including grip strength, with no evidence of atrophy. AR 60, 377. Indeed, while PA Hernandez opined that Plaintiff could only reach overhead with her right arm 5-10% of the time and 5-10% of the time with her left arm, Dr. Wagner opined that '[w]orking with arms overhead may be performed frequently." AR 377. Dr. Wagner also indicated that "[p]ushing and pulling may be performed frequently with limitations due to the neck pain." AR 377. Dr. Wagner expressly indicated that there were no other manipulative

limitations. AR 377. Insofar as Plaintiff contends that the ALJ failed to set forth specific and legitimate reasons for crediting Dr. Wagner's opinion over PA Hernandez's opinion (Doc. 18 at 11), these standards of articulation are no longer applicable.

As a final matter, the ALJ concluded that PA Hernandez's assessment was not consistent with Plaintiff's relatively conservative treatment history. AR 30. Notwithstanding that the ALJ only cites generally to the medical record to support this conclusion, the ALJ's decision clearly identified and evaluated Plaintiff's conservative treatment history. *Meade v. Kijakazi*, No. 1:20-CV-00519-BAM, 2021 WL 4429418, at *5 (E.D. Cal. Sept. 27, 2021) (finding no error where court able to adequately determine the basis for the ALJ's decision). In particular, the ALJ considered that despite a recommendation both for surgery or for consideration of injections (AR 433), Plaintiff had not had surgery or injections. AR 25. Plaintiff argues that the ALJ's reasoning is disingenuous because the record suggests that she lacked insurance for needed care (AR 374), and she declined surgery due to lack of insurance and financial constraints (AR 322, 374. (Doc. 18 at 11.) However, when surgery was recommended, Plaintiff's provider noted that Plaintiff "did not appear to be interested in surgical treatment." AR 433. Further, although Plaintiff asserted that she declined surgery due to a lack of health insurance, she later told PA Hernandez in March 2019 that she was "not ready at this point to proceed" with surgery. AR 344. Additionally, Plaintiff testified at the hearing in May 2020 that she never asked about insurance coverage for her surgery. AR 74-75. The ALJ also considered that Plaintiff had not undergone any physical therapy or chiropractic adjustment after 2017. AR 25. According to the record, Plaintiff underwent less than a month of physical therapy and two months of chiropractic treatment in early 2017, but there is no indication of further treatment. AR 384-88, 389-98. While Plaintiff reportedly was instructed to discontinue such conservative treatment, there is no indication that Plaintiff sought alternative treatment for her back or neck, such as injections. The ALJ also noted that Plaintiff had no documented emergency room evaluations due to uncontrolled pain, and she represented in 2020 that she was not taking medication for pain. AR 25, 62.

Based on the foregoing, the Court finds that the ALJ properly considered of the factors of supportability and consistency in evaluating PA Hernandez's opinion and the ALJ's decision to deem PA Hernandez's opinion unpersuasive is supported by substantial evidence.

**B. Plaintiff's Subjective Testimony**

Plaintiff argues that "the ALJ failed to identify any clear and convincing reason, supported by the record, to reject Plaintiff's symptom complaints." (Doc. 18 at 14.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 22. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's subjective complaints. First, the ALJ acknowledged that Plaintiff had limitations stemming from lumbar degenerative disc disease with disc herniation at the L4-L5 level and degenerative disc disease of the cervical spine with multilevel disc herniations, thecal sac narrowing, facet arthropathy, and foraminal narrowing. The ALJ also acknowledged that Plaintiff was in a motor vehicle accident. AR 22. Notwithstanding this acknowledgement, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent because "the objective medical evidence does not support them." AR 22. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). While the record contained positive findings regarding her lumbar and cervical spine, the ALJ considered that the weight of the objective examination findings did not support the level of limitation alleged. AR 23. For example, on January 6, 2017, during evaluation following her motor vehicle accident, Plaintiff had full range of motion of the neck and back with no tenderness of the back, independent ambulation and normal sensation,

motor function, coordination, and strength.  Following treatment, Plaintiff was able to move her neck and back without difficulty or grimace.  AR 23, 423-26.

In March 2017, a physical examination completed by Dr. Watson showed no scoliosis or spasms, normal gait with no use of an assistive device, normal lumbar motor function, as well as intact sensation, lower extremity strength, and reflexes.  Although Plaintiff had pain on elevated/supine straight leg raising on the right and left, her straight leg raise-extended/sitting was negative on both the right and left.  AR 24, 428-32.

In February 2018, Plaintiff had a grossly intact motor and sensory examination, normal gait and was in no acute distress.  AR 318.  Similarly, in May 2018, she had a grossly intact motor examination and was in no acute distress.  AR 320-21.

Although in August 2018 Plaintiff presented with a slow, careful gait, notable listing of the lumbar spine, decreased range of motion with all movements, and positive straight leg testing (322-23), the ALJ noted that only 12 days later, Plaintiff had a normal gait and a grossly intact motor and sensory examination and was in no acute distress.  AR 24, 325-26.  In October 2018, Plaintiff again presented with normal range of motion, normal strength, and normal gait.  AR 331.  Likewise, in November 2018, Plaintiff had a normal gait and grossly intact motor and sensory examination.  AR 24, 333, 338.

The ALJ acknowledged that in December 2018, Plaintiff again had lumbar spine listing, decreased range of motion with all movements, positive straight leg testing on the right and left and a slow, careful gait.  AR 24, 342.  Also, in March 2019, she had lumbar spine listing, decreased range of motion with all movements, and slower careful gait.  AR 344-45.  But, as the ALJ noted, two weeks after the March 2019 examination, Plaintiff presented with a normal gait, normal motor function and was in no acute distress.  AR 24, 349.  Thereafter, in April 2019, she also presented with a normal gait and grossly intact motor and sensory examination.  AR 24, 352.  Likewise, in August 2019, Plaintiff again had a normal gait and normal motor function with no acute distress or tenderness of the neck. AR 24, 364.

The ALJ also considered that during the consultative examination with Dr. Wagner in October 2019, Plaintiff had a somewhat stiff neck with reduced cervical and lumbar range of motion.  Supine

15

straight leg raising was positive for radicular symptoms on the left, slightly positive on the right without radiation, but seated straight leg raise was negative. Plaintiff was able to easily get up and down from a chair, walk at a normal speed to the examination room without assistance, and sit comfortably during the examination. Nevertheless, she was able to get on and off the examination table and bend at the waist, demonstrating good dexterity and flexibility with the ability to bring her ankles up to her knees to take off her socks. She had normal gait, station, coordination, and negative Romberg testing with the ability to take several steps on heels and toes. She also had normal muscle bulk and tone, normal sensation, reflexes, and strength, including grip strength, with no evidence of muscle atrophy. AR 24, 374-77. Additionally, the ALJ noted that an evaluation in January 2020, revealed no musculoskeletal deformity, no acute distress and no neurological deficits, with normal motor function. AR 25, 406.

The objective examination evidence generally does not support Plaintiff's subjective allegations that she must lie down for most of the day, she has difficulty turning her neck, sitting, standing, and walking, she is unable to stand even 15 to 20 minutes and she can lift less than five pounds. AR 22. The Court therefore concludes that the ALJ did not err in discounting Plaintiff's subjective complaints as unsupported by the objective medical record.

Second, the ALJ discounted Plaintiff's subjective complaints based on her relatively conservative treatment history. AR 25. An ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's subjective complaints. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment). As previously discussed, the ALJ appropriately considered that despite a recommendation both for surgery or for consideration of injections (AR 433), Plaintiff had no surgery or injections. Plaintiff claimed at one point that she did not have surgery due to a lack of insurance, but she later reported that she did not pursue surgery because she was not ready to have it. AR 344. An ALJ may discount a plaintiff's subjective complaints based on an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). The ALJ also considered that Plaintiff had not undergone any physical therapy or chiropractic adjustment after 2017, had no documented emergency

16

room evaluations due to uncontrolled pain, and she represented in 2020 that she was not taking medication for pain. AR 25, 62.

Third, the ALJ considered that the medical record demonstrated some improvement with treatment. AR 25. An ALJ may discount a plaintiff's subjective complaints when symptoms can be controlled by treatment and/or medication. *See Deyon v. Kijakazi*, No. 1:20-CV-01532-SKO, 2022 WL 1782465, at *10 (E.D. Cal. June 1, 2022) (citations omitted). To support this reason, the ALJ cites to limited chiropractic and physical therapy records from February and March 2017, along with reported improvement with anti-inflammatory medication. AR 25, 385-86, 390-92, 394-97, 427. The Court does not find this to be an adequate reason for discounting Plaintiff's complaints. Plaintiff reportedly was advised to discontinue chiropractic care and physical therapy and the noted improvement with medication was contained in a single evaluation note in March 2017. AR 384, 427. Even if this reason is inadequate, there are sufficient other reasons to support the assessment of Plaintiff's subjective complaints. See *Bray v. Astrue*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

Fourth, the ALJ considered Plaintiff's activities of daily living, noting in particular that Plaintiff at times reported activities that suggested a higher level of functioning. AR 27. An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"). Even where a Plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113. Here, Plaintiff reported "quite limited" daily activities, but the ALJ noted Plaintiff's testimony that she had driven and performed some shopping since her surgery recommendation. AR 27, 58-59. She also indicated in March 2019 that she sometimes shopped alone and drove short distances. AR 27, 270. In October 2019, she reported to Dr. Wagner that she cooked and cleaned, drove a few times a week, shopped, performed her own activities of daily living without assistance, and walked a bit for exercise. AR 27, 374.

Finally, the ALJ noted that Plaintiff worked at non-disqualifying substantial gainful activity levels between August 2017 and January 2018. AR 27, 208-09, 211, 214, 217, 218, 220-22, 224, 247. The ALJ properly considered Plaintiff's ability to work during the relevant period in evaluating her subjective complaints. *See Bray v. Astrue*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("ALJ made specific findings in support of his decision to discount [the claimant's] testimony," including that she "recently worked as a personal caregiver for two years, and has sought out other employment since then"); *see also Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ability to do carpentry work undermined complaints of disabling symptoms); *cf. Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled."). Plaintiff argues that the desire to work, or a failed effort to work, in and of itself, is not a sufficient basis to discount Plaintiff's subjective complaints. (Doc. 18 at 14.) Here, however, the ALJ did not rely solely on Plaintiff's work activity to discount her subjective complaints. The Court also finds that the ALJ appropriately determined that Plaintiff's ability to work after her alleged onset date suggested that her functioning, at least at times, had been greater than alleged. AR 27.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied; and
2. The Clerk of this Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Marina A. Vera.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that the failure to file objections within the specified time

may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 11, 2022**    /s/ Barbara A. McAuliffe
                              UNITED STATES MAGISTRATE JUDGE